Filed Feb. 1, 1887.

———————◆———————

No. 12,621.

VINTON *v.* THE BUILDERS AND MANUFACTURERS ASSO-
CIATION ET AL.

MECHANIC'S LIEN.—*Notice.—Act of 1883.—Section 5 Construed.*—Under sec-
tion 5 of the act of March 6th, 1883 (Acts of 1883, p. 140), concerning
mechanics' liens, a verbal notification to the owner or his agent that
material is being furnished to or work performed for the contractor, is
sufficient to enable a material man or mechanic to acquire a lien.

SAME.— *Word "Notify."—Meaning of.*—The word "notify," used in such sec-
tion, never imports or implies, of necessity, a notice in writing, and such
notice will not be required unless it is clear that it was so intended.

From the Marion Superior Court.

*S. Claypool* and *W. A. Ketcham,* for appellant.

*E. A. Parker* and *L. B. Swift,* for appellees.

HOWK, J.—In their brief of this cause, appellant's learned
counsel say: "There is but one question presented by the
record, viz.: What is the proper construction to be given to
section 5 of the act of March 6th, 1883, in regard to mechan-
ics' liens?"

The act referred to by counsel is entitled "An act con-

cerning liens of mechanics, laborers, and material men," was approved March 6th, 1883, and, by virtue of an emergency declared, was in force from and after its passage. Acts of 1883, p. 140, *et seq.* Section 5 of such act reads as follows:

"To enable the mechanics or other persons furnishing material or performing labor, as above provided, to a contractor, to acquire such lien, he must at or before the time he furnishes the material or performs the labor, notify the owner or his agent that he is furnishing the materials or performing the work for the contractor."

In our decision of this cause, we shall confine our opinion strictly to the consideration of the question, as above stated by appellant's counsel. This question is fairly presented for our decision, by the record of this cause and the error assigned thereon. Without stating the record or any part thereof, it will suffice to say that it became a question in the cause below, whether or not the appellant as owner was entitled, under the provisions of section 5 above quoted, to notice in writing from the persons who were seeking to enforce alleged liens against her or her property, for materials furnished or labor performed to or for her contractor; or whether or not a verbal notice merely from such persons to her or her agent was a sufficient compliance with the requirements of such section of the statute, to enable such persons to acquire the lien mentioned therein. The court at special term held, and the general term affirmed such decision, that mechanics or other persons are not required, under such section 5 of the statute, to notify the owner or his agent in writing, but that a verbal notification to the effect specified therein, given at or before the time mentioned, to the owner or his agent, will be a sufficient compliance with such section of the statute to enable such mechanics or other persons to acquire the lien provided for therein. If this construction of section 5, above quoted, be the correct construction, the judgment below must be affirmed. If, however, the true construction of such section 5 required that appellant, or her

agent, should have been notified in writing, then the judgment below must be reversed.

We are of opinion that the court below, both at special and in general term, has given the true construction to section 5, above quoted, of the act of March 6th, 1883, concerning liens of mechanics, laborers and material men. The word *notify*, used in such section, is a compound word of Latin derivation, and its primary and literal meaning is "to make known." According to the best American lexicographers of the English language, Webster and Worcester, the secondary meaning of the word *notify* is "to give notice to;" though it is conceded that the use of the word, in this secondary sense, is not sanctioned by English usage. Webster gives and illustrates this secondary meaning of the word "notify," as follows: "To give notice to; to inform by words or writing, in person or by message, or by any signs which are understood; as, the constable has *notified* the citizens to meet at the city hall; the bell *notifies* us of the time of meeting." It is clear from these secondary definitions of Webster, and clearer still, if possible, from his illustrations, that the word *notify* never imports or implies, of necessity, a notice in writing. Whenever it is intended that the word "notify," as used in a statute, shall signify a notice in writing, we think that such intention should be expressed in words, or should be implied by, or be apparent from, other provisions of the same statute. There is nothing in the statute under consideration to indicate that the word "notify" is used in section 5 of the act, in any other than its primary and literal meaning. On the contrary, we think it clearly appears from all the provisions of the statute, that whenever it was intended by the law-making power that notice in writing must be given, such intention is expressed therein in clear and unmistakable terms. Indeed, the rule is general that, unless otherwise provided by statute, a verbal notice will, in all cases, be as effective as a written notice, provided

it conveys the necessary information between the proper parties, at or within the prescribed time.

What we have said, disposes of the controlling question in this case, adversely to the views expressed by appellant's counsel in argument. The conclusion we have reached, that a verbal notification to the appellant or her agent was a sufficient compliance with the requirements of section 5 of the statute, so far as the kind of notice is concerned, necessarily leads to the affirmance of the judgment below. For the facts found by the trial court fully support, we think, its conclusions of law, to the effect that the authorized agents of appellant were verbally notified by the appellees, at the proper time, that they were severally furnishing materials for her contractor.

The judgment is affirmed, with costs.

Filed Nov. 23, 1886; petition for a rehearing overruled Feb. 1, 1887.